E-FILED
Wednesday, 20 May, 2020  03:58:29 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-cr-30036** |
| | ) | |
| **NICOLE SCHNEIDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Nicole Schneider's Amended
Motion for Compassionate Release (d/e 90) requesting a reduction
in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).
For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On February 23, 2015, Defendant pled guilty to the lesser-
included offense of conspiracy to possess a mixture or substance
containing a detectable amount of methamphetamine with the
intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846.
On July 22, 2015, the Court sentenced Defendant to five years'
probation.

On April 10, 2017, the Court revoked Defendant's term of probation because Defendant possessed marijuana and failed to provide random urine specimens as directed.  The Court imposed a sentence of time served—one day—and three years of supervised release.

Less than a month later, on May 4, 2017, the Court revoked Defendant's term of supervised release because Defendant possessed marijuana and morphine.  The Court sentenced Defendant to 10 months' imprisonment and 3 years of supervised release.  Defendant's supervised release recommenced on February 9, 2018.

On November 12, 2019, the Court again revoked Defendant's term of supervised release after Defendant failed to successfully complete substance abuse treatment, failed to provide a urine sample as directed, and failed to successfully complete cognitive therapy.  The Court sentenced Defendant to nine months' imprisonment with no additional term of supervised release to follow.  Defendant is currently serving her sentence at the Family Guidance Center in Springfield, Illinois, and has a projected release date of September 10, 2020.  Memorandum (d/e 91), at 1-2.

On May 8, 2020, Defendant filed a pro se motion for compassionate release (d/e 88) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On May 14, 2020, after the Federal Public Defender's Office was appointed to represent Defendant, an Amended Motion for Compassionate Release was filed.  Defendant requests compassionate release due to her pregnancy, her health issues, and the COVID-19 pandemic.  Defendant is seven months' pregnant and claims to suffer from asthma and hypogammaglobulinemia, an immune system disorder.  Defendant also requests that the Court waive the exhaustion requirement set forth at 18 U.S.C. § 3582(c)(1)(A).  Defendant acknowledges that there are no reported cases of COVID-19 at the Family Guidance Center.  See Motion (d/e 90), at 19.

If released from custody, Defendant will reside at her parents' house in Morrisonville, Illinois.  The United States Probation Office, in a Memorandum (d/e 91) addressing Defendant's request for compassionate release, concludes that Defendant's parents' house appears to be a suitable residence for Defendant.

Defendant is pregnant, and her estimated due date is July 27, 2020.  Memorandum, at 1.  On April 1, 2020, she was transferred

from the satellite camp adjacent to FCI Greenville to the Family Guidance Center so that she could participate in the Mothers and Infants Together (MINT) program.  Id. at 1-2.  A few days before her transfer, Defendant tested negative for COVID-19.  Id. at 2.  Defendant has not made a request to the BOP for compassionate release.  Id.

According to records that the United States Probation Office received from the BOP, Defendant suffers from allergy-induced asthma that is controlled with the use of an inhaler.  Id.  The records received from the BOP did not confirm that Defendant suffers from hypogammaglobulinemia.

On May 19, 2020, the Government filed a Response to Defendant's Motion for Compassionate Release (d/e 92).  Despite having "serious concerns about an immediate transfer to an environment in which [Defendant] is pregnant and without any type of supervision from the justice system," the Government does not oppose Defendant's compassionate release motion.  Response (d/e 92), at 3.

## II. ANALYSIS

Generally, the Court is statutorily prohibited from modifying a

term of imprisonment once it has been imposed.  <u>See</u> 18 U.S.C. §

3582(c).  However, several statutory exceptions exist, one of which

allows the Court to grant a defendant compassionate release if

certain requirements are met.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory

language at 18 U.S.C. § 3582(c)(1)(A).  <u>See</u> First Step Act of 2018,

Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the

Court could grant a defendant compassionate release only if the

Director of the BOP filed a motion seeking that relief.  With the

enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now

allows an inmate to file a motion for compassionate release, but

only after exhausting administrative review of a BOP denial of the

inmate's request for the BOP to file a motion or waiting 30 days

from when the inmate's request was received by the BOP, whichever

is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the
> term of imprisonment (and may impose a term of
> probation or supervised release with or without

conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Here, because Defendant has not made a request to BOP to file a compassionate release motion on her behalf, the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) has not been satisfied.  Defendant argues that the Court has the authority to waive compliance with this statutory requirement.

Below, the Court addresses whether it has jurisdiction to consider Defendant's motion, whether the Court can waive the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and whether compassionate release is appropriate in this case.

## A.  Jurisdiction

Federal district courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 552 (2005).  Without jurisdiction, this Court cannot hear Defendant's request for compassionate release.  See Henderson ex rel.

Henderson v. Shinseki, 562 U.S. 428, 434 (2011).

An important distinction exists as to whether a procedural rule is a jurisdictional requirement or a claim-processing rule. See id. ("This question is not merely semantic but one of considerable practical importance for judges and litigants."); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160 (2010). Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." Henderson, 562 U.S. at 435. Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Id.

The U.S. Supreme Court adopted a "bright-line" test for deciding when to classify a procedural rule as jurisdictional. Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16 (2006). The inquiry is whether Congress has "'clearly state[d]'" that the rule is jurisdictional." Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013). "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character." Id.

In United States v. Taylor, the Seventh Circuit, overruling its

own precedent, held that 18 U.S.C. § 3582(c)(2) sets forth a non-jurisdictional rule.  778 F.3d 667, 671-72 (7th Cir. 2015) ("A district court has subject-matter jurisdiction to consider a motion for relief under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief.").  Section 3582(c)(2) allows the Court to reduce a term of imprisonment if the defendant was sentenced based on a sentencing range that was subsequently lowered by the United States Sentencing Commission.  18 U.S.C. § 3582(c)(2).

While Taylor did not address § 3582(c)(1)(A), Taylor's reasoning is equally applicable to that statutory subsection.  The Court finds that Congress did not "clearly state" in § 3582(c)(1)(A) that the exhaustion requirement is jurisdictional.  Therefore, the Court finds that the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule, not a jurisdictional rule.  See Henderson, 562 U.S. at 435 (noting that claim-processing rules merely require "that the parties take certain procedural steps at certain specified times"); United States v. Haney, 2020 WL 1821988, at *2 ("The exhaustion requirement provides "who -- the BOP or defendant -- may move for compassionate release and when such a motion may

be made.").

**B.     Waiver of the Exhaustion Requirement**

Although the Court has jurisdiction to hear Defendant's motion, Defendant has not met the exhaustion requirement set forth in § 3582(c)(1)(A).  The Court must determine whether it has the authority to waive the 30-day waiting period of the exhaustion requirement.

In the short time the COVID-19 pandemic has wreaked havoc on this country, many federal judges have considered this issue. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19.  See, e.g., United States v. Scparta, 2020 WL 1910481 (S.D.N.Y. April 19, 2020); United States v. Guzman Soto, 2020 WL 1905323 (D. Mass. Apr. 17, 2020)  United States v. Russo, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); United States v. Smith, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Bin Wen, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, 2020 WL 1698732 (D. Conn. Apr. 8,

2020); <u>United States v. Colvin</u>, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); <u>United States v. Perez</u>, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020).  Other judges have held that the 30-day requirement is mandatory, not subject to any exception.  <u>See</u>, <u>e.g.</u>, <u>United States v. Cox</u>, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); <u>United States v. Demaria</u>, 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); <u>United States v. Rensing</u>, 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020); <u>United States v. Roberts</u>, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); <u>United States v. Woodson</u>, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020).

Equitable exceptions to statutory rules have been recognized in the past.  <u>See</u> <u>Holland v. Florida</u>, 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling"); <u>Hamer v. Neighborhood Hous. Servs. of Chicago</u>, 138 S. Ct. 13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture).  Other circuit courts have recognized equitable exceptions since the Supreme Court's decision in <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016).  <u>See</u> <u>Grewal v. Cuneo</u>

Gilbert & LaDuca LLP, 2020 WL 897410, at *1 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its enforcement is subject to waiver, forfeiture, and other equitable exceptions."); Fed. Ins. Co. v. United States, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines.").

In Ross, the Supreme Court considered the exhaustion requirements of the Prison Litigation Reform Act (PLRA), which stated that "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  136 S. Ct. at 1856.  The Supreme Court held that the exhaustion of administrative remedies was mandatory because the statutory language "suggest[ed] no limits on an inmate's obligation to exhaust."  Id.  As in Ross, the exhaustion requirement at issue here is imposed by statute, not case law, so the Court has less authority to recognize exceptions.  Id. at 1857 ("[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions.  But a statutory exhaustion provision stands on a different footing.  There, Congress sets the rules—and

courts have a role in creating exceptions only if Congress wants them to.") (citation omitted).

The statutory text of § 3582(c)(1)(A) and the congressional intent for implementing amendments to that section substantially differ from the PLRA.  With respect to the PLRA, Congress amended 42 U.S.C. § 1997e(a) to make "exhaustion provisions mandatory." Historical and Statutory Notes, 42 U.S.C.A. § 1997e (West Supp. 1997).  Quite the opposite is true for § 3582(c)(1)(A), as the First Step Act extended to inmates the ability to file motions for compassionate release.

In addition, as recognized in <u>Haney</u>, § 3582(c)(1)(A) is not "an exhaustion requirement in the traditional sense."  2020 WL 1821988, at *3.  Section 3582(c)(1)(A) does not require the inmate to fully exhaust BOP procedures before coming to court.  The PLRA, on the other hand, does require complete exhaustion of available administrative remedies.  <u>See</u> <u>Guzman Soto</u>, 2020 WL 1905323, at *5 ("This alternative to exhaustion suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process."); <u>Haney</u>, 2020 WL 1821988, at *3 ("But the hybrid requirement in this statute – either exhaust or wait 30 days

– substantially reduces the importance of the first purpose, as it

allows a defendant to come to court before the agency has rendered

a final decision.").  This Court agrees with the reasoning expressed

in Guzman Soto:

> While a court may certainly decline to consider a motion
> where Defendant has not waited thirty days, nothing in
> the statutory scheme suggests that Congress intended to
> preclude the court from exercising judicial discretion and
> to take into account timeliness and exigent
> circumstances related to why the defendant seeks
> compassionate release.

Guzman Soto, 2020 WL 1905323, at *5.

Mandating the exhaustion requirement in this case and other

cases around the country during the COVID-19 pandemic cannot

be what Congress intended.  Based on the House Report for the

First Step Act, the statute is designed to "enhance public safety"

and "make . . . changes to Bureau of Prisons' policies and

procedures to ensure prisoner and guard safety and security."  H.R.

Rep. 115-699 at 22; see also Scparta, 2020 WL 1910481, at *7.

Denying Defendant's motion without reaching the merits, only to

order Defendant to make a request to the BOP and wait 30 days,

would frustrate these purposes.  In that time, Defendant is at risk

of contracting a deadly illness, causing irreparable harm and

rendering her request for compassionate release futile.

The Court concludes that § 3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the 30-day period in all cases. The decision must be made on a case-by-case basis. In this case, the Court finds that the 30-day requirement should be waived. The Court excuses Defendant's failure to file a request with the BOP for compassionate release and wait 30 days from the BOP's receipt of the request before seeking relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

## C.   Eligibility for Compassionate Release

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy statements issues by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

1.  <u>Extraordinary and Compelling Reasons for Release</u>

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has established that extraordinary and compelling reasons warrant a reduction in her term of imprisonment.  The spread of COVID-19 presents extraordinary and unprecedented challenges for the country and creates a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Socially distancing can be difficult for individuals living or working in a residential reentry center.

Defendant suffers from asthma, a condition that increases the serious risks that COVID-19 presents for Defendant.  Indeed, the CDC has identified asthma as a comorbidity that increases the likelihood of serious complications from COVID-19.  <u>See</u> Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed April 24, 2020)

("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes.").

In addition, Defendant has less than four months remaining on her sentence and is due to give birth in approximately two months.  Defendant's sentence was imposed for nonviolent supervised release violations, and Defendant has supportive parents who are willing to allow Defendant and Defendant's soon-to-be-born child to live with them if Defendant is released.

2.    Sentencing Commission Policy Statements

A reduction of Defendant's term of imprisonment is consistent with the Sentencing Commission's policy statements.  The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in

18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[1]  U.S.S.G. § 1B1.13 cmt. n.1.  One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present.  U.S.S.G. § 1B1.13 cmt. n.1(D).  Defendant's pregnancy, her health issues, and the COVID-19 pandemic create an extraordinary and compelling

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisons."  No policy statement provides guidance for when a defendant files a motion.  Nevertheless, the Court considers § 1B1.13.

reason that warrants a reduction of Defendant's term of imprisonment.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13.  If Defendant quarantines herself at her parents' house away from her parents and her soon-to-be-born child, Defendant will diminish the risk of spreading the virus.  Otherwise, the Court does not find that Defendant, who is serving a sentence for nonviolent supervised release violations, poses a danger to the community.

Defendant has established that extraordinary and compelling reasons warrant a reduction in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  Such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.  Accordingly, Defendant has satisfied the requirements to be eligible for compassionate release, and the Court finds that compassionate release is appropriate in this case.

**D.    Supervised Release**

When the Court sentenced Defendant in November 2019 to a term of nine months' imprisonment, the Court did not impose an

additional term of supervised release.  However, in the event the Court grants a defendant compassionate release, the Court has the authority to "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).

The Court shares the Government's concerns about Defendant being released from custody with no oversight.  Defendant has a history of disregarding rules imposed by the Court in an effort to assist Defendant and protect the public.  Therefore, after Defendant is released from BOP custody, she shall serve a term of supervised release lasting 3 months and 20 days.

During her term of supervised release, Defendant shall not commit another federal, state, or local crime.  She shall not unlawfully use or possess a controlled substance.  She shall submit to one drug test within 15 days of release from imprisonment and two drug tests thereafter, as directed by the probation officer. Pursuant to 34 U.S.C. § 40702, Defendant shall cooperate in the collection of DNA as directed by the probation officer or the BOP. These conditions are mandated by statute.

In addition, the following discretionary conditions shall apply

during Defendant's term of supervised release:

1.     You shall not knowingly leave the federal judicial district in which you are approved to reside without the permission of the Court.

2.     You shall report to the probation office in the district to which you are released within 72 hours of release from custody. You shall report to the probation officer in a reasonable manner and frequency as directed by the Court or probation officer.

3.     You shall follow the instructions of the probation officer as they relate to your conditions of supervision.  You shall answer truthfully the questions of the probation officer as they relate to your conditions of supervision, subject to your right against self-incrimination.

4.     You shall notify the probation officer at least ten days prior to, or as soon as you know about, any changes in residence or any time you leave a job or accept a job.

5.     You shall permit a probation officer to visit you at home between the hours of 6 a.m. and 11 p.m., at your place of employment while you are working, or at the locations of your court-ordered treatment providers.  You are required to possess the technology necessary for your probation officer to conduct a virtual home visit.  Visits may be conducted at any time if the probation officer has reasonable suspicion to believe that you are in violation of a condition of supervised release or if you or a third party has reported that you are unable to comply with a directive of the probation officer because of illness or emergency.  During any such visit, you shall permit confiscation of any contraband observed in plain view of the probation officer.

6.     You shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.  This condition does not prevent you from invoking your Fifth Amendment right against self-incrimination.

7.     You shall not knowingly possess a firearm, ammunition, destructive device as defined in 18 U.S.C. § 921(a)(4), or any object

that you intend to use as a dangerous weapon as defined in 18 U.S.C. § 930(g)(2).

 8. You shall not knowingly be present at places where you know controlled substances are illegally sold, used, distributed, or administered.

 9. You shall not knowingly meet, communicate, or otherwise interact with any person whom you know to be a convicted felon or to be engaged in, or planning to engage in, criminal activity, unless granted permission to do so by the Court.

 10. You shall serve your entire term of supervised release in home confinement.  The home confinement will start as soon as possible after your term of supervised release begins.  You shall be monitored by telephonic monitoring.  During this time, you will remain at your place of residence at all times and shall not leave except when such leave is approved in advance by the U.S. Probation Office or in the event of a medical emergency.

 The first three discretionary conditions are administrative and necessary to any term of supervised release.  The next three conditions are warranted because Defendant's probation officer is statutorily required to remain informed of Defendant's conduct and condition.

 Discretionary condition 7 is necessary to protect Defendant's probation officer during home visits.  Additionally, Defendant, a convicted felon, is statutorily prohibited from possessing a firearm or ammunition under state and federal law.  Discretionary conditions 8 and 9 are justified by Defendant's history of substance

abuse and her criminal history and will help her minimize the risk that she will relapse into substance abuse and assist her in avoiding others who are violating the law.

Discretionary condition 10 is justified by Defendant's unwillingness to abide by conditions imposed by the Court in the past.  Defendant has served three terms of imprisonment in this case due to her drug possession, failures to provide urine samples, and failures to complete treatment mandated by the Court.

### III. CONCLUSION

For the reasons set forth above, Defendant Nicole Schneider's Amended Motion for Compassionate Release (d/e 90) is GRANTED. The Court hereby reduces Defendant's term of imprisonment from nine months to time served.  Following her release from custody, Defendant shall serve a term of supervised release lasting 3 months and 20 days, during which time the aforementioned conditions will be in effect.  Defendant's pro se motion for compassionate release (d/e 88) is DENIED as MOOT.

The Bureau of Prisons is ORDERED to release Defendant within 24 hours.  The Clerk is DIRECTED to send a copy of this Opinion to the Family Guidance Center in Springfield, Illinois.

Defendant must self-quarantine for a period of 14 days beginning at the time of her release, including while she travels from the Family Guidance Center to her parents' house. Defendant shall travel to Morrisonville, Illinois, in a vehicle that allows her to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER: May 20, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE